UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

In re:                                          }
Alvin B. Miller, Jr.,                           }        Case No. 25-41464-JJR-13
                                                }
            Debtor.                             }

MEMORANDUM OPINION AND ORDER

On April 15, 2021, the Acker Family Administrative Trust sold a parcel of improved real property located at 900 Noble Street in Anniston, Alabama (the "Property") to Alvin B. Miller, Jr., the Debtor.  The purchase money, or at least a portion thereof, was to be paid under the terms of a promissory note in the principal amount of $61,532.44, secured by a purchase money mortgage encumbering the Property.

The introductory paragraph of the note provides that "[The Debtor], promises to pay to the order of [the Acker Family Trust] the principal sum of . . . [$61,532.44] at the interest rate of 4.00% per annum."  The next paragraph of the note provides that the principal and interest are payable as follows:

> Payable in Sixty (70) [sic] installments as follows:  Sixty-nine (69) payments of One Thousand and no/100 Dollars ($1,000.00), which installments consist of interest only, and commence [sic] on the 15th day of May, 2021, and continuing on the 22nd day of each month thereafter with one final balloon payment of all unpaid principal and accrued interest, if not sooner paid, on January 15, 2026 [sic].

On May 14, 2025 the note and mortgage were assigned to Allison Cole Acker ("Acker").  (claim. 1.)

On November 3, 2025, approximately two months before the note matured, the Debtor filed for relief under chapter 13 of the Bankruptcy Code. He scheduled the Property's value at

$54,820 and the secured claim owing to Acker at $15,000; he listed the claim as disputed. (Doc. 15, Sch. A/B and Sch. D.)

Acker filed a proof of claim for $75,332.44 and valued the Property at $75,500. Copies of the note and mortgage were included with the proof of claim. On the claim form, Acker stated the annual interest rate on the debt was a fixed rate of 4%. Acker itemized her claim as follows:

```
Principal Balance Owed ………………………… $61,532.44
Prepetition attorney's fees & collection costs ……. 11,600.00
Unpaid interest payment due 10/22/25………………1,000.00
Unpaid interest payment due 11/22/25………………1,000.00
Total unpaid late fees……………………………....... 200.00
        Total claim outstanding……………………. $75,332.44
```

Acker filed a motion seeking relief from the automatic stay (Doc. 27) with respect to her mortgage, and the Debtor filed an objection to Acker's claim (amended obj. at Doc. 66). Both parties agree the terms of the note with respect to its rate of interest are ambiguous and recognizing the ambiguity asked the court to determine how the interest accrual on the note should be calculated. Such determination is needed for the court to later rule on the issues raised by Acker's stay relief motion and the Debtor's objection to Acker's claim, as well as a possible settlement.

The admitted ambiguity arises from the language in the note quoted above. Acker argues that the initial 69 monthly installments of $1,000 each were intended to be all interest, which would equate to an annual rate of 19.50%, considerably more than the 4% recited in the note and shown on the face of the proof of claim. However, based on her proof of claim, it is obvious Acker contends that at maturity, after all the $1,000 interest installments have been paid or become due, only then would the 4% rate apply on the unpaid principal. The Debtor maintains that over the term of the note the monthly installments should be applied first to simple interest accruing at 4% annually and the balance to principal.

According to Acker's proof of claim, the note has matured and is in default, thus the final two paragraphs on the first page of the note, which are not ambiguous, are applicable and are the most reasonable interpretation of the repayment provisions of the note:

> [Upon default] the entire principal sum and accrued interest . . . shall at once become due and payable without notice . . . .

> In the event of said default, and the declaration of maturity of the indebtedness hereby evidenced, the principal indebtedness then due shall be arrived at by applying successively each of the payments which shall have been made on this note, first to the payment of the interest on the principal sum then remaining unpaid, and the balance to the account of the principal.

(claim 1, p.5.) Applying installments first to accrued interest and then to principal is the most common method of amortizing an installment loan secured by a real estate mortgage. If the parties' intent was to calculate interest at 4% only after maturity, as proposed in Acker's proof of claim, the default provisions of the note providing for payment application to accrued interest before being applied to principal would be surplusage. The unusual direction that payments of $1,000 per month be applied to interest only is found in a single unsupported paragraph of the note, and that paragraph also contains other obvious errors (such as "Sixty (70) installments" and the miscalculation of the final payment due date being stated as month 55 (i.e., January 15, 2026), rather than month 60 as misstated or month 70 as intended).

Reading the documents as a whole, the court finds the parties' intent was that the principal obligation accrued simple interest at 4% annually with payments applied first to accrued interest and then to principal. The court further finds that the balloon maturity date should be month 70, with the first payment having been due on May 15, 2021, and the 70th due on February 22, 2027. The Property is not the Debtor's residence; thus, the mortgage is not subject to the anti-modification provision of section 1322(b)(2) of the Bankruptcy Code. Nonetheless, interest on

the allowed unpaid principal payable under a plan will accrue at a *Till* rate of interest (which will be higher than the 4% contract rate).

Accordingly, Acker's claim is allowed in an amount that reflects a 70-month term, with each of the first 69 monthly installments due being in the amount of $1,000.00 applied first to simple interest at the per annum rate of 4% and the balance of each installment applied to reduce principal, with the final (70th) installment being in the amount of the unpaid principal and interest (at 4% per annum). The parties are directed to calculate that amortization and payment history and submit to the court a joint report of the principal balance owing when the case was filed. To the extent attorney fees and costs have been added to the principal obligation, Acker must substantiate each with an invoice from the attorney, proof of payment, and an explanation of the reasonableness of the work performed. If the parties cannot agree as to the reasonableness of any particular attorney fee or cost or other advance such as for insurance or taxes that were added to the debt (although no such advances appear on the claim itemization), the parties should outline the dispute and their relative positions in their joint report. Late fees should also be itemized. Acker must supply the attorney fee and late fee details to counsel for the Debtor no later than June 2, 2026. The joint report is the Debtor's responsibility to prepare and file and shall include the signatures of counsel for the Debtor, Acker, and the Trustee, and must be filed no later than June 9, 2026. Because the final calculation remains to be determined, the Debtor's Amended Objection to Claim 1 (Doc. 66) and Acker's Objection to Confirmation (Doc. 26) remain set for hearing on June 11, 2026, at 11:15 a.m., along with Acker's Motion for Relief from Stay (Doc. 27), as well as the Trustee's Motion to Dismiss and Objection to Confirmation. Issues regarding the Property's value relative to the claim balance and whether retaining and paying for the Property is necessary

and reasonable will be taken up at confirmation, along with all other objections, after the claim balance is calculated and are not addressed in this Order.

SO ORDERED this 21st day of May 2026.

/s/ James J. Robinson
JAMES J. ROBINSON
U.S. BANKRUPTCY JUDGE